```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


Douglas G. Havens,           :

        Plaintiff,           :

     v.                      :    Case No. 2:12-cv-0637

Commissioner of Social       :    JUDGE GEORGE C. SMITH
   Security,                      Magistrate Judge Kemp
                             :
        Defendant.
```

REPORT AND RECOMMENDATION

I.  Introduction

Plaintiff, Douglas G. Havens, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.  Those applications were filed on February 22, 2008 and March 10, 2008 respectively, and alleged that plaintiff became disabled on May 1, 2007.

After initial administrative denials of his applications, plaintiff was given a hearing before an Administrative Law Judge on June 28, 2010.  In a decision dated December 3, 2010, the ALJ denied benefits.  That became the Commissioner's final decision on May 24, 2012, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on September 28, 2012.  Plaintiff filed his statement of specific errors on October 29, 2012.  The Commissioner filed a response on December 20, 2012.  Plaintiff filed a reply brief on January 4, 2013, and the case is now ready to decide.

II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 43 years old at the time of the administrative hearing and who has a high school education,

testified as follows.  His testimony appears at pages 9-20 of the administrative record.

Plaintiff last worked as a dump truck driver, a job which also required him to shovel out material from the truck on a fairly frequent basis.  He also drove a garbage truck and picked up residential garbage.  He stopped working in 2007 when his job was eliminated.  He had looked for work elsewhere but was unsuccessful.

Physically, plaintiff testified to back problems which made driving very uncomfortable.  He had back surgery in the past. Due to a lack of money, he was not seeing a doctor and was taking only over-the-counter medications.  His pain radiated into his left leg and that leg would become numb if he sat for too long. Standing was also painful.  Medication does not relieve the pain. He also gets abdominal pain from standing too long.

Plaintiff testified that he has always been heavy and probably weighed more than 500 pounds.  His sitting, standing and walking were extremely limited, and he could not do any lifting. Most days, he lies on the floor and watches television.  He also sleeps a lot, but not well.  He does very little in the way of household chores or shopping.

In response to questioning by his attorney, plaintiff said that he is able to shower by himself but cannot bend over to tie his shoes.  He also has chronic cellulitis from swelling in his legs.  He has been told to keep his legs propped up during the day to reduce swelling.  He soaks his legs in salt water and takes antibiotics to control this condition.

### III.  The Medical Records

The medical records in this case are found beginning on page 196 of the administrative record.  The pertinent records can be summarized as follows.

Plaintiff had been treated for cellulitis and hypertension

from 2005 to 2007.  A report from the practice group that treated him indicated most of his problems were related to his weight.  No specific work-related limitations were noted.

A note dated May 19, 2008 shows that plaintiff had his back surgery in 1998, which was nine years before he stopped working. An X-ray taken on that date showed some mild disc space narrowing at L4-5 and L5-S1.  The note also stated that plaintiff complained of low back pain and left leg pain and numbness and that he weighed over 500 pounds.  (Tr. 211).

Dr. Smith performed a consultative examination on the same day.  Plaintiff reported a lifting injury in 1997 leading to pain and eventually to surgery.  He returned to work in 2001 but continued to have symptoms.  He also described cellulitis of both legs, worse on the left.  He could stand and walk only a few feet but walking caused abdominal pain.  Lifting was painful and driving was difficult.  On examination, plaintiff walked with his legs far apart and could only bend to 45 degrees.  His upper body examination was normal, but as to the lower body, straight leg raising to 30 degrees bilaterally caused back pain.  He had restriction in the range of motion of his back and both hips. The lower third of both legs showed evidence of cellulitis.  Dr. Smith diagnosed post-laminectomy pain with L5 radiculopathy in the left leg, hypertension, and marked obesity.  (Tr. 212-18).

Dr. McCloud, a state agency reviewer, completed a residual functional capacity assessment form on June 30, 2008.  He concluded that plaintiff could do a limited range of light work and that he had no environmental restrictions.  He also noted that Dr. Smith did not comment on functional limitations based on his examination.  (Tr. 219-26).

Dr. Smith did a second examination of plaintiff in 2010.  He noted that plaintiff's present complaint was abdominal pain brought on by walking one or two blocks and daily headaches.  His

weight still exceeded 500 pounds. Walking to the door and back made him short of breath. He could not squat. The strength in his upper extremities was normal, and he had normal ranges of motion in his hips, knees and ankles. His skin looked better than at the prior examination. A chest X-ray was negative. Dr. Smith did not know what was causing the abdominal pain. He thought that plaintiff retained the ability to do sedentary work. (Tr. 237-39). He also filled out a form on which he stated that plaintiff could not do activities such as shopping, traveling alone, walking a block, using public transportation, or preparing a meal, and that he had some environmental restrictions relating to extreme temperatures, vibrations, noise, and moving machinery. Also, he could never climb stairs, ramps, ladders or scaffolds, could never stoop, kneel, crouch, or crawl, and could only occasionally balance or operate foot controls. Plaintiff also had some limitations on his ability to push and pull and to reach overhead or otherwise. (Tr. 244-49).

### IV. The Vocational Testimony

A vocational expert, Mr. Brown, also testified at the administrative hearing. His testimony begins at page 20 of the record. He characterized plaintiff's past work as medium and either unskilled or semi-skilled, although the residential garbage collector job is usually performed at the very heavy exertional level.

Mr. Brown was asked some questions about a hypothetical person who could perform a limited range of light work, with some restrictions on climbing, balancing, stooping, kneeling, crouching and crawling. With those restrictions, that person could, in Mr. Brown's view, not do plaintiff's past work. However, someone with those restrictions and who shared plaintiff's age, education and work experience could perform certain jobs such as assembler, machine tender, and cleaner.

Those jobs existed in significant numbers in the state and national economies.  If such a person were further limited to lifting only ten pounds occasionally, would need to change positions every 30 to 45 minutes, and could sit for up to six hours and stand or walk for up to two hours during a work day, the person could still do some sedentary assembler and machine tender jobs and could also work as an inspector.  However, if the person were as limited as plaintiff described in his testimony, that person could not do those or any other jobs.

                V.   The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 33 through 43 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured requirements for disability benefits through December 31, 2012.  Next, plaintiff had not engaged in substantial gainful activity from his alleged onset date of May 1, 2007 through the date of the decision.  As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including morbid obesity, chronic cellulitis, degenerative disc disease of the lumbar spine at the L4-5 and L5-S1 levels, and status post lumbar laminectomy.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform less than a full range of sedentary work, but that he could lift and carry five pounds frequently and ten pounds occasionally and that he could sit for six hours in a workday but had to change positions every 30-45 minutes.  The ALJ found that, with these restrictions, plaintiff could not perform

his past relevant work, but he could perform those jobs identified by the vocational expert, such as hand packager, cleaner and machine tender, and that significant numbers of such jobs existed in the Ohio and national economies. Consequently, the ALJ concluded that plaintiff was not entitled to benefits.

VI. <u>Plaintiff's Statement of Specific Errors</u>

In his statement of specific errors, plaintiff raises a single issue. He argues that the ALJ's residual functional capacity finding is not supported by substantial evidence. The Court generally reviews the administrative decision of a Social Security ALJ under this legal standard:

<u>Standard of Review.</u> Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" <u>Id</u>. <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's

decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

   Plaintiff has divided his argument into several sub-parts, but each has to do with the way in which the ALJ dealt with Dr. Smith's 2010 examination and findings.  In particular, he notes that the postural limitations appearing in Dr. Smith's report - which the ALJ said he adopted - were not incorporated into the hypothetical question posed to the vocational expert nor into the ALJ's residual functional capacity finding, and he also argues that the vocational expert's testimony could not be relied upon because his testimony did not take these limitations into account.  Plaintiff makes the same argument with respect to the limits on his ability to reach, push, pull and operate foot controls.  Finally, he asserts that the ALJ ignored Dr. Smith's opinion about plaintiff's ability to engage in everyday activities when assessing plaintiff's credibility.

   The Commissioner concedes that "the ALJ failed to include certain elements of Dr. Smith's opinion, such as some postural and environmental limitations, in the RFC and his hypotheticals posed to the VE."  Defendant's Memorandum in Opposition, Doc. 13, at 6.  However, the Commissioner argues that the omission of postural limitations for a claimant limited to less than a full range of sedentary work is harmless error because such work does not usually require these types of activities.  The Commissioner does appear to agree that if plaintiff were unable to stoop, the number of sedentary jobs he could do would be reduced, but asserts that based on Dr. McCloud's opinion and on plaintiff's description of his activities, it is "likely" that he can do some stooping.  Id. at 8.  The Commissioner also contends that restrictions on pushing, pulling, reaching and on using foot controls are largely irrelevant to the performance of sedentary

work, as are the various environmental limitations found by Dr. Smith.  Finally, the Commissioner defends the ALJ's credibility assessment as being supported by substantial evidence.  In reply, plaintiff asks the Court to disregard the Commissioner's *post hoc* rationalization of the ALJ's decision - especially as it relates to the ability to stoop - and to remand the matter for further consideration.

Plaintiff is correct that the ALJ expressly stated in his decision that he "adopt[ed] the opinions of Dr. Smith, the consulting internist" and rejected Dr. McCloud's opinions "because they are not consistent with the other medical evidence ...."  (Tr. 37-38).  In light of this statement, it is hard to accept the Commissioner's argument that the ALJ actually concluded that plaintiff could do occasional stooping, since Dr. McCloud, whose opinion was rejected, said that plaintiff could stoop, and Dr. Smith, whose opinion was accepted, said he could not.  Further, the ALJ made no reference to that ability when discussing plaintiff's credibility, and being able to put on one's pants (in a very restricted way, as plaintiff testified) or to bathe or get something out of a refrigerator cannot reasonably be equated to the ability to performing stooping on an occasional basis during an eight-hour work day.  Thus, regardless of how much the other restrictions imposed by Dr. Smith might have eroded (or not eroded) the sedentary job base, the Court is left with an administrative decision which both finds the plaintiff unable to stoop and which fails to factor that limitation into the ultimate residual functional capacity finding.  The Commissioner's own memorandum indicates that under SSR 96-9p, which the Court quotes here, "[a] complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself,

only minimally erode the unskilled occupational base of sedentary work." Thus, it is critical to a determination of disability in this case whether plaintiff can or cannot stoop occasionally.

The omission of that limitation in the questions posed to Mr. Brown is understandable, given that Dr. Smith's opinion about stooping was rendered after the administrative hearing was held. The failure to acknowledge the issue or to deal with it in any fashion in the administrative decision is error, however, and it is not harmless. The Commissioner has not argued that any of the jobs identified by the vocational expert do not require stooping, nor would the record support such an argument. This Court has remanded such cases in the past, finding that although reversal is not required in light of SSR 96-9p's statement that the inability to stoop "usually" erodes a sedentary job base, "SSR 96-9p does not demand an automatic finding of disabled when a claimant, who is limited to sedentary work, has a complete inability to stoop." <u>Snyder v. Commissioner of Social Sec.</u>, 2009 WL 891771, *4, 141 Soc.Sec.Rep.Serv. 400 (S.D. Ohio March 31, 2009). <u>See also Ortiz v. Astrue</u>, 2010 WL 3036736 (N.D. Ohio July 30 ,2010)(when "it is unclear whether Plaintiff could actually perform the sedentary jobs identified by the VE" an error such as the one committed here "does not amount to harmless error and is reason to remand"). In other words, the Court cannot say with certainty that "had the ALJ correctly applied the [regulation], he would have ultimately reached the same conclusion." <u>Johnson v. Astrue</u>, 2010 WL 5559542 (N.D. Ohio Dec. 3, 2010), <u>adopted and affirmed</u> 2010 WL 5478604 (N.D. Ohio Dec. 30, 2010). It is entirely possible that the vocational testimony, had it taken the inability to stoop into account, would have been markedly different, or that had the ALJ followed SSR 96-9p, he would have reached a different result (or at least made an effort to clarify the record). Plaintiff was therefore prejudiced by the ALJ's error, and a remand is necessary.

VII. Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge